IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 9, 2016


**STATE OF TENNESSEE v. BRIAN CHRISTOPHER DUNN**

**Appeal from the Circuit Court for Williamson County**
**No. II-CR127671-B       Walter C. Kurtz, Judge**

_____

**No. M2015-00759-CCA-R3-CD – Filed April 12, 2016**

_____


Brian Christopher Dunn ("the Defendant") was convicted of initiation of the process to manufacture methamphetamine and driving with a suspended, cancelled, or revoked license—6th offense. On appeal, the Defendant argues that the evidence was insufficient to support his conviction for initiation of the process to manufacture methamphetamine. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR. J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and ALAN E. GLENN, JJ., joined.

Sandra L. Wells, Franklin, Tennessee, for the appellant, Brian Christopher Dunn.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; Kim Helper, District Attorney General; and Tammy Rettig, Assistant District Attorney General, for the appellee, State of Tennessee.


**OPINION**

**I. Factual and Procedural Background**

The Williamson County Grand Jury indicted the Defendant with one count of initiating the process to manufacture methamphetamine, one count of driving with a suspended, cancelled, or revoked license, and one count of driving with a suspended, cancelled, or revoked license—6th offense. A co-defendant, Chelsea Ladd, was also indicted for initiating the process to manufacture methamphetamine.

*State's Proof:*

At trial, Fairview Police Department Officer Russell Bernard testified that he responded to a single-vehicle crash in Williamson County. When he arrived on the scene, Officer Bernard saw a Chevy Tahoe in a wooded area with damage to the front end of the vehicle. Both the Defendant and Ms. Ladd were standing outside the vehicle and did not appear to have serious injuries. The Defendant informed Officer Bernard that he had been driving the Tahoe and claimed that he had fallen asleep at the wheel. The Defendant was not able to produce any identification and told Officer Bernard that his license had been revoked. The Defendant admitted that he had smoked marijuana "just prior to driving," and Officer Bernard stated that the Defendant smelled of marijuana. Officer Bernard also noted that both the Defendant and Ms. Ladd appeared to be nervous—they were pacing in the roadway and could not stand still. The Defendant also appeared "slow-moving, kind of lethargic almost where he just was kind of slow to respond sometimes to [Officer Bernard's] questions." Ms. Ladd also appeared to be "under the influence of something."

Officer Bernard asked both the Defendant and Ms. Ladd if they had any illegal drugs in the Tahoe, but they said they did not. Based on the odor of marijuana and the Defendant's admission that he had smoked marijuana prior to driving, Officer Bernard decided to search the Tahoe. In the "cargo area" of the Tahoe, Officer Bernard found a pile of clothes and a clear, plastic bag "with a funnel sticking out of it." Officer Bernard stated that he believed the pile contained a mixture of men's and women's clothes. Officer Bernard picked up the bag and saw that it contained a yellow funnel, two crumpled coffee filters inside the funnel, plastic tubing attached to a plastic bottle cap, lithium batteries, a pack of unused coffee filters, and a cold compression pack that had been cut open. Officer Bernard stated that the plastic bag contained items used to manufacture methamphetamine. Officer Bernard noted that the plastic tubing was discolored. He also stated that the open cold compression pack should have contained ammonium nitrate pellets and a small ampule of water, which when broken reacts with the ammonium nitrate and causes the bag to become cold. However, there was no water ampule inside the cold compression pack, and only a small amount of ammonium nitrate remained at the bottom of the bag. It did not appear that the water ampule had been broken to cause a reaction with ammonium nitrate and "activate" the cold compression pack. The only time Officer Bernard had seen a cold compression pack open in such a manner was in association with methamphetamine labs. He also stated that ammonium nitrate is one of the ingredients used to make methamphetamine. He did not find any methamphetamine in the Tahoe.

Officer Bernard also stated that the plastic bag contained a sewing kit, head bands, and a hair brush with some hair that appeared to match the length and color of Ms.

- 2 -

Ladd's hair. However, Officer Bernard said that, because the bag was in the back of the Tahoe, he could not "directly connect" the bag to either Ms. Ladd or the Defendant.

After securing the bag in his vehicle, Officer Bernard spoke with the Defendant and Ms. Ladd separately and asked each of them if they had smoked methamphetamine. Both of them admitted that they had used methamphetamine "within the last day or two." Without telling the Defendant what he had found in the Tahoe, Officer Bernard asked the Defendant if there was anything else in the car. The Defendant responded, "Whatever's been found in that car is not mine, I don't know what it is." Ms. Ladd also denied "any knowledge or possession of the items that were in her car." Ms. Ladd informed Officer Bernard that the Defendant had been driving the Tahoe for the last four days and that she did not know what he was doing during that time. However, the Defendant told the officer that Ms. Ladd "had just picked him up that day in the vehicle."

Eventually, Ms. Ladd was taken to the hospital to receive treatment for an ankle injury. As she was leaving the scene, the Defendant "started yelling at her so she could hear him and said that—told her not to [']take a charge,['] that the items were his." Officer Bernard asked the Defendant which items belonged to him, and the Defendant said that "he didn't know, but they were his."

Officer Bernard transported the evidence to the police department to be photographed and stored. All the evidence, except the cold compression pack, was stored in the evidence locker.

On cross-examination, Officer Bernard stated that the Tahoe was registered to Ms. Ladd. Officer Bernard also stated that he did not know when the items were last used to make methamphetamine and that he did not know how long those items were in the Tahoe. Officer Bernard reiterated that, because the plastic bag was found in the back of the Tahoe, Officer Bernard could not definitively say that either the Defendant or Ms. Ladd possessed the bag.

Sharon Taylor testified that she was the evidence technician at the Fairview Police Department. Ms. Taylor noted that she refused to accept the opened cold compression pack because it was considered an explosive and that the City of Fairview did not have a locker to store explosives. Ms. Taylor also noted that she sent the evidence to the Tennessee Bureau of Investigation ("TBI") for analysis.

Deputy Brad Fann, of the Williamson County Sheriff's Office, explained how methamphetamine is manufactured. He testified that a person making methamphetamine can buy cold compression packs from a drug store, cut open the pack, discard the water ampule, and use the ammonium nitrate in the methamphetamine cooking process. Deputy Fann stated that approximately one cup of ammonium nitrate is needed to make

methamphetamine and that a cold compression pack contains approximately one cup of ammonium nitrate. Deputy Fann stated that he was not aware of any lawful use for a cold compression pack that had been cut open. Based on his training, Deputy Fann opined that the items found in the back of the Tahoe were used to manufacture methamphetamine.

Laura Cole, a chemist with the TBI, testified that the funnel, tubing, and coffee filters found in the Tahoe were submitted to her for testing to determine whether they contained traces of methamphetamine. Ms. Cole noted that she did not find a sufficient amount of residue to test.

*Defendant's Proof:*

Ms. Ladd testified that she was also charged with initiating the process to manufacture methamphetamine. Ms. Ladd recalled that "some nitrate . . . some batteries, a bottle, [and] some tubing" were found in the Tahoe. When asked if she knew how the items came to be in the car, Ms. Ladd stated, "I just know that they was in my car earlier that day from where me and some of my friends had messed around." She said she did not know who opened the cold compression pack. However, she said she knew it was not opened by the Defendant "[b]ecause [she] wasn't with [the Defendant] earlier that day like [she] was with some other friends. The only reason [the Defendant] was there in the first place was because [she] had asked him to drive [her]." Ms. Ladd said that the items in the plastic bag belonged to her.

On cross-examination, Ms. Ladd denied a romantic relationship with the Defendant but said that they were close friends. Ms. Ladd admitted that she paid the Defendant's bail. She also stated, "I feel like it's my fault [the Defendant] was ever there. I asked him to drive me and if he wouldn't have been driving—if I wouldn't never asked him to drive me he wouldn't have been there and that's a fact." Ms. Ladd said she did not recall denying on the night of the wreck that the items belonged to her, and she said she "was pretty sure [she] didn't say anything." Ms. Ladd thought the Defendant told her not to say a word because he was looking out for her and not because he knew about any of the items in the car. She denied that the Defendant claimed the items as his.

Ms. Ladd admitted that she had been using methamphetamine in the days before the wreck, but she said the Defendant had not used methamphetamine. When asked if she would be surprised if the Defendant told Officer Bernard that he had used methamphetamine, Ms. Ladd said, "Yeah, I'd be surprised. I don't believe that he did unless you have some type of proof." Ms. Ladd denied telling Officer Bernard that the Defendant had possession of her Tahoe for the four days prior to the wreck. She insisted that the items did not belong to the Defendant. Ms. Ladd stated that she pleaded guilty to attempting to initiate the manufacture of methamphetamine. She thought "that pretty

- 4 -

much says that [she] was the person responsible." Ms. Ladd also reported that she had been sentenced to drug court after her plea but had since been "kicked out" of drug court and was serving her sentence in confinement.

The jury convicted the Defendant of initiating the process to manufacture methamphetamine and of driving with a suspended, cancelled, or revoked license. The Defendant personally waived his right to a jury trial as to the remaining count of driving with a suspended, cancelled, or revoked license—6th offense. The trial court accepted the Defendant's waiver, and the State introduced a certified copy of the Defendant's driving record and certified judgments for the Defendant's prior convictions. The trial court found the Defendant guilty of driving with a suspended, cancelled, or revoked license—6th offense, and merged the other driving conviction with that offense.

The trial court imposed concurrent sentences, for an effective eleven years' incarceration. The judgments of conviction were entered on February 27, 2015. There is no Motion for New Trial in the record on appeal. The Defendant filed his notice of appeal on April 22, 2015.

## II. Analysis

On appeal, the Defendant argues that the evidence was insufficient to support his conviction for initiating the process to manufacture methamphetamine because (1) there was no proof as to how long the cold compression pack had been in the vehicle, no evidence as to when and by whom it was opened, and no proof that its contents were used to make methamphetamine; and (2) there was no proof that the Defendant constructively possessed the items in the plastic bag. The State argues that the Defendant's appeal should be dismissed because it was untimely filed. Further, the State contends that the evidence was sufficient to support the Defendant's conviction.

As a preliminary matter, we must address the State's claim that the Defendant's appeal should be dismissed for failure to file a timely notice of appeal. Rule 4(a) of the Tennessee Rules of Appellate Procedure states that the notice of appeal "shall be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from." However, in criminal cases, the notice of appeal is not jurisdictional, and this court may waive the timely filing requirement in the interest of justice. Id. To determine whether waiver is appropriate, "this [c]ourt will consider the nature of the issues presented for review, the reasons for and length of the delay in seeking relief, and any other relevant factors presented in the particular case." State v. Markettus L. Broyld, No. M2005-00299-CCA-R3-CO, 2005 WL 3543415, at *1 (Tenn. Crim. App. Dec. 27, 2005). In this case, the notice of appeal was filed nearly sixty days after the entry of the judgment. However, because the sole issue raised on appeal could bring about an outright dismissal of the Defendant's conviction, we will waive the timely

filing requirement in the interest of justice. <u>See</u> <u>State v. Wayne Sanders</u>, No. W2014-01455-CCA-R3-CD, 2015 WL 3990707, at *4 (Tenn. Crim. App. Jul. 1, 2015).

Also, the Defendant, in error, argues that his methamphetamine conviction was based solely on circumstantial evidence and asks us to review the sufficiency of the evidence under the "exclude every other reasonable hypothesis save the guilt of the defendant" standard of <u>State v. Crawford</u>, 470 S.W.2d 610, 612 (Tenn. 1971). First, our supreme court has noted that the United States Supreme Court has "specifically rejected the notion 'that the prosecution [i]s under an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt.'" <u>State v. Dorantes</u>, 331 S.W.3d 370, 380 (Tenn. 2011) (quoting <u>Jackson v. Virginia</u>, 443 U.S. 307, 326 (1979)). In <u>Dorantes</u>, our supreme court adopted the standard announced by the United States Supreme Court and abrogated the heightened standard for circumstantial evidence outlined in <u>Crawford</u>. <u>Id.</u> at 381. Our standard of review "is the same whether the conviction is based upon direct or circumstantial evidence." <u>Id.</u> at 379 (quoting <u>State v. Hanson</u>, 279 S.W.3d 265, 275 (Tenn. 2009)) (internal quotation marks omitted). Second, there was direct proof in the form of the statements of both Ms. Ladd and the Defendant at the scene and trial testimony of Ms. Ladd that the jury could consider in reaching its verdict of guilt.

We review a sufficiency of the evidence challenge to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson</u>, 443 U.S. at 319 (emphasis in original); <u>see also</u> Tenn. R. App. P. 13(e). Questions of fact, the credibility of witnesses, and weight of the evidence are resolved by the fact finder. <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978), <u>superseded on other grounds by</u> Tenn. R. Crim. P. 33 <u>as stated in</u> <u>State v. Moats</u>, 906 S.W.2d 431, 434 n.1 (Tenn. 1995). This court will not reweigh the evidence. <u>Id.</u>

A guilty verdict removes the presumption of innocence, replacing it with a presumption of guilt. <u>State v. Bland</u>, 958 S.W.2d 651, 659 (Tenn. 1997); <u>State v. Tuggle</u>, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant bears the burden of proving why the evidence was insufficient to support the conviction. <u>Bland</u>, 958 S.W.2d at 659; <u>Tuggle</u>, 639 S.W.2d at 914. On appeal, the "State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." <u>State v. Vasques</u>, 221 S.W.3d 514, 521 (Tenn. 2007).

In the instant case, the Defendant was convicted of one count of initiation of a process to manufacture methamphetamine. Tennessee Code Annotated section 39–17–435 states in pertinent part:

> (a) It is an offense for a person to knowingly initiate a process intended to result in the manufacture of any amount of methamphetamine.

- 6 -

(b) It shall not be a defense to a violation of this section that the chemical reaction is not complete, that no methamphetamine was actually created, or that the process would not actually create methamphetamine if completed.

(c) For purposes of this section, "initiates" means to begin the extraction of an immediate methamphetamine precursor from a commercial product, to begin the active modification of a commercial product for use in methamphetamine creation, or to heat or combine any substance or substances that can be used in methamphetamine creation.

. . . .

Tenn. Code Ann. § 39-17-435 (a), (b) and (c). The State argued in this case that the Defendant knowingly began the active modification of a commercial product for use in methamphetamine creation by cutting open the cold compression pack.

The Defendant asserts that there was insufficient evidence to show that he was the person who opened the cold compression pack because there was no evidence as to when the pack was opened or by whom and no proof that the contents of the cold compression pack were used to make methamphetamine. The evidence presented at trial showed that the opened cold compression pack containing small amounts of ammonium nitrate was found in a plastic bag containing other items that, when used in combination, can be used to manufacture methamphetamine. Deputy Fann testified that the ammonium nitrate found in cold compression packs is an essential ingredient in manufacturing methamphetamine and that he knew of no lawful use for an opened cold compression pack. The plastic bag contained other "female items" such as headbands and a brush with hair consistent with the color and length of Ms. Ladd's hair, but the bag was found under a pile of men's and women's clothes. The Defendant admitted using methamphetamine in the one or two days prior to the discovery of the bag. Further, the Defendant initially stated, "Whatever's been found in that car is not mine, I don't know what it is." However, when Ms. Ladd was leaving the scene, the Defendant told her not to "take a charge" and claimed that the items found in the Tahoe were his. Moreover, Ms. Ladd told Officer Bernard at the scene that the Defendant had possession of her car for four days prior to the wreck. In contrast, Ms. Ladd testified at trial that she had possession of her car that day, that the Defendant was simply giving her a ride somewhere, and that he was not responsible for the items found in the plastic bag. However, the jury resolved the discrepancies between Ms. Ladd's statement to police and her testimony, and we will not disturb their finding on appeal. See Cabbage, 571 S.W.2d at 835. We conclude that the combination of the direct evidence, in the form of the Defendant's and Ms. Ladd's statements at the scene, and the circumstantial evidence was sufficient for the jury to find beyond a reasonable doubt that the Defendant was the person who cut open the cold

compression pack in order to obtain ingredients to use in the manufacture of methamphetamine.

The Defendant also asserts that the evidence was insufficient to show that he constructively possessed the plastic bag. Initially we note that the Defendant was charged with initiation not with possession of methamphetamine or possession of drug paraphernalia. Possession of the plastic bag at the time it was found by officers in the vehicle, whether actual or constructive, is not required to prove the Defendant was the person who initiated the process to manufacture methamphetamine. See Tenn. Code Ann. § 39-17-435.

Further, we conclude that the evidence was sufficient for the jury to conclude that the Defendant had actual possession of the cold compression pack at the time it was cut open. "Actual possession" refers to the physical control of an item. State v. Fayne, 451 S.W.3d 362, 370 (Tenn. 2014). Proof of actual possession may be established through direct or circumstantial evidence, "so long as the evidence indicates that [the defendant] was more than a mere bystander or merely associated with someone who owned or controlled the drugs." State v. Richard L. Howell, No. M2001-00351-CCA-R3-CD, 2003 WL 213779, at *5 (Tenn. Crim. App. Jan. 31, 2003), perm. app. denied (Tenn. July 28, 2003). Logically, one must physically control an item in order to cut it open. Therefore, by finding that the Defendant initiated the process to manufacture methamphetamine by cutting open the cold compression pack, the jury necessarily found that the Defendant actually possessed the cold compression pack at some point in time before it was found by the police. There is sufficient evidence in the record to support this conclusion. Viewing the evidence in a light most favorable to the State, the Defendant had possession of the car for four days prior to the discovery of the plastic bag. Further, he admitted to using methamphetamine in the twenty-four to forty-eight hours prior to the bag's discovery, and he said the items in the car belonged to him.

### III. Conclusion

The evidence was sufficient to support the Defendant's conviction for initiating the process to manufacture methamphetamine. The judgment of the trial court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE